## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| JACOB G.,[1] | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 25 C 12309** |
| v. | ) | |
| | ) | **Magistrate Judge Gabriel A. Fuentes** |
| FRANK BISIGNANO, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| **Defendant.** | ) | |

### MEMORANDUM OPINION AND ORDER[2]

Before the Court are Plaintiff Jacob G.'s motion for summary judgment (D.E. 17) and brief in support of reversing and remanding the Commissioner's decision denying his application for Supplemental Security Income ("SSI") (D.E. 18, "Pl. Mem."), Defendant's memorandum in support of affirming the Commissioner's decision (D.E. 21, "Def. Mem."), and Plaintiff's reply brief in support of reversal and remand (D.E. 22, "Pl. Reply).

### I.      Procedural History

Plaintiff applied for SSI on June 22, 2022, alleging a disability onset date of June 1, 2022. (R. 63.) After a hearing, the Administrative Law Judge ("ALJ") issued a written decision denying Plaintiff's application on October 25, 2024, finding Plaintiff not disabled under the Social Security Act (the "Act").[3] (R. 60-75.)

---

[1] The Court in this order is referring to Plaintiff by his first name and first initial of his last name in compliance with Internal Operating Procedure No. 22 of this Court. To the extent the Court uses pronouns in this order, the Court uses those pronouns used by the parties in their memoranda.

[2] On February 9, 2026, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was reassigned to this Court for all proceedings, including entry of final judgment. (D.E. 15.)

[3] The Appeals Council subsequently denied review of the opinion (R. 1-3), making the ALJ's decision the final decision of the Commissioner. *Bertaud v. O'Malley*, 88 F.4th 1242, 1244 (7th Cir. 2023).

## II.     The ALJ Decision

The ALJ applied the Social Security Administration's ("SSA") five-step sequential evaluation process to Plaintiff's claims. At Step One, the ALJ found Plaintiff had not engaged in substantial gainful activity since his application date. (R. 65.) At Step Two, the ALJ determined that Plaintiff had the severe impairments of depressive disorder, anxiety disorder, and borderline intellectual functioning. (*Id.*) At Step Three, the ALJ found Plaintiff's impairments alone or in combination did not meet or medically equal any Listing. (R. 66.) The ALJ assessed Plaintiff with a residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional limitations:

> he is able to understand, remember, concentrate, persist, and perform simple, routine tasks and instructions with the ability to follow simple, uninvolved oral, written, or diagrammed instructions in a low-stress environment, defined in this case as having simple, work-related decisions and routine changes in the work setting; he can never interact with the public, and can only occasionally interact with supervisors and co-workers, with the caveat that he can never perform team tasks; he can attend for 2 hours at a time, and would then require a 15-minute break, which can be accommodated by routine breaks and lunch; and he is limited to tasks that do not involve a specific production rate of pace such as assembly line work or hourly quotas, but can meet end of day goals.

(R. 70.) At Step Four, the ALJ determined that Plaintiff has no past relevant work, but that at Step Five, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. 73-74.). Thus, the ALJ determined that Plaintiff was not disabled under the Act since the date the application was filed. (R. 75.)

## III.     Legal Standard

The Court "will reverse an ALJ's decision only if it is the result of an error of law or it is not supported by substantial evidence, which is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Yokosh v. Bisignano*, 170 F.4th 631, 637 (7th Cir. 2026) (internal citations and quotations omitted). "In making these determinations, an ALJ is

2

subject to only the most minimal of articulation requirements... Our role is extremely limited, and we do not reweigh evidence, make credibility determinations, or substitute our judgment for the ALJ's determination." *Cain v. Bisignano*, 148 F.4th 490, 496-97 (7th Cir. 2025) (internal quotations omitted). An "ALJ need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Lincoln v. Bisignano*, 173 F.4th 886, 892 (7th Cir. 2026) (internal citations and quotations omitted). The Seventh Circuit has clarified that district courts, on review of ALJ decisions in Social Security appeals, are subject to a similar minimal articulation requirement as ALJs: "A district (or magistrate) judge need only supply the parties . . . with enough information to follow the material reasoning underpinning a decision." *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024).

## IV.     Analysis

On appeal, Plaintiff argues that the ALJ's opinion should be reversed and remanded because: (1) the ALJ erred by failing to evaluate the persuasiveness of a medical source opinion under 20 C.F.R. § 404.1520c; (2) the ALJ did not properly account for all of Plaintiff's limitations in the RFC; and (3) the ALJ did not properly evaluate whether Plaintiff met the C criteria of Listing 12.04 or 12.06. (Pl. Mem. at 1.) The Court's discussion of Plaintiff's arguments follows below.

### A. The ALJ's Evaluation of the Medical Opinions Was Supported by Substantial Evidence.

Plaintiff contends that the ALJ erred by failing to evaluate the persuasiveness of a June 2021 neuropsychological evaluation, which stated that, in the workplace, Plaintiff will require "[c]onsistent supervision…at least during the initial stages of training." (Pl. Mem. at 4, quoting R. 443.) According to Plaintiff, the evaluation contradicts the RFC assigned by the ALJ, limiting Plaintiff to "only occasionally interact with supervisors and co-workers." (Pl. Mem. at 5, quoting

R. 70.) Plaintiff alleges that if the ALJ had considered this evaluation, she could have reached a different conclusion regarding whether Plaintiff can complete competitive work. (Pl. Mem. at 5.)

Although the ALJ did not cite the June 2021 neuropsychological evaluation, which preceded Plaintiff's SSI application by one year, the ALJ considered and cited the four medical opinions that, unlike the June 2021 evaluation, occurred within the relevant time frame, after the SSI application date. The ALJ explained, in detail, which parts of those opinions were consistent with and supported by the record and which were not. The ALJ's determination that Plaintiff was limited to "only occasionally interact with supervisors and co-workers" was thus supported by substantial evidence. *See also Lincoln*, 173 F.4th at 892 (internal citations and quotations omitted) ("ALJ need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning").

Moreover, contrary to Plaintiff's argument, the recommendation of the June 2021 neuropsychological evaluation that Plaintiff should have "consistent supervision, at least during the initial stages of training" is not at odds with the RFC's provision that Plaintiff "only occasionally interact with supervisors and co-workers." (R. 438-48.) Plaintiff attempts to use the terms "constant" and "consistent" interchangeably (*see* Pl. Reply at 2), but unlike terms "constant" and "occasional," which Social Security regulations use to describe different frequencies of an activity,[4] SSA uses the term "consistent" to describe an activity's compatibility with a claimant's limitations, *not* the frequency of an activity. *See, e.g.*, 20 C.F.R. § 404.1527(c)(4) ("the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion.") Moreover, in everyday parlance, "consistent" likewise does not refer to the

---

[4] SSA defines constantly as an activity that exists two-thirds or more of the time, and occasionally as an activity that exists up to one-third of the time. Program Operations Manual System, Quick Reference Guide for Medical and Vocational evaluation. https://secure.ssa.gov/apps10/poms.nsf/lnx/0425001001

frequency of an activity. Rather, it means "marked by harmony, regularity, or steady continuity: free from variation or contradiction." https://www.merriam-webster.com/dictionary/consistent. It is thus entirely possible for a supervisor to provide consistent supervision, while only having occasional interactions with Plaintiff.

Plaintiff also contends that the assigned RFC is at odds with the state agency consultative opinion that Plaintiff have "minimal contact with co-workers and supervisors." (Pl. Mem. at 5, citing R. 57.) But the ALJ's determination that a limitation of "minimal interactions" with co-workers and supervisors was too restrictive was supported by substantial evidence. The ALJ adequately explained that based on the medical evidence in the record, a limitation to "occasional" interactions was mostly consistent with the record. (R. 73, citing R. 42-49, 51-59, 552-554, 683-685.)  Plaintiff's argument amounts to a request that the Court reweigh that aspect of the state agency consultative opinion, and this the Court will not do. *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021).

Plaintiff also argues that the ALJ should have considered that the June 2021 neuropsychological evaluation was consistent with the treating source opinions by psychologist Georgeann L Iaconoo Russell, PhD, that Plaintiff needed "special supervision" in order to "sustain an ordinary routine." (Pl. Mem. at 5, citing R. 553, 684). However, as with a limitation to "consistent supervision," a limitation to "special supervision" can also be done with the "occasional" interaction with supervisors and coworkers that the ALJ provided in the RFC. Moreover, the ALJ supported with substantial evidence the decision to reject Dr. Russell's opinions because "the evidence as a whole does not support such extreme restrictions." (R. 73.) Therefore, any error in the ALJ's decision not to cite the June 2021 neuropsychological evaluation was harmless because the Court is convinced that the ALJ would reach the same result even if she

5

had considered that evaluation. *See Wilder v. Kijakazi*, 22 F.4th 644, 654 (7th Cir. 2022) ("we will not remand a case to the ALJ for further specification where we are convinced that the ALJ will reach the same result. An error is harmless if, upon examination of the record, the court can predict with great confidence what the result of remand will be") (internal citations and quotations omitted).

**B. The ALJ's Assessment of Plaintiff's Limitations in the RFC Was Supported By Substantial Evidence**.

Plaintiff argues that the ALJ erred by not addressing and accounting for Plaintiff's mathematical limitations in the RFC assessment, in particular, his difficulties with multiplication and division. (Pl. Mem. at 6.) Plaintiff alleges that if the ALJ had properly included limitations related to mathematical abilities in the RFC, the ALJ would not have determined that Plaintiff could perform the requirements of a Lab Equipment Cleaner (DOT #381.687-022). (Pl. Mem. at 6-7.)

In support of his argument, Plaintiff points to a July 23, 2023, psychological examination where he struggled with multiplication and division, as well as June 1, 2022, neuropsychological testing where he scored in the fifth percentile in arithmetic. (R. 549, 540.) But the ALJ considered this evidence, and concluded that despite "reveal[ing] more restrictive functions," Plaintiff showed "uncooperative behavior that do raise concerns that the observations are not an accurate representation of the claimant's functioning." (R. 67, citing R. 521-24, 547-51.) With regard to the July 23, 2023, psychological examination where Plaintiff had difficulty with multiplication and division, the ALJ noted that Plaintiff was "difficult to engage, and only fairly cooperative." (R. 67, citing R. 521-24.) The ALJ also cited the June 1, 2022, neuropsychological testing as evidence of Plaintiff's "learning deficits," but found that "his reports that he received Bs and Cs in school without special education, combined with the largely intact memory skills observed by his provider

6

and the neuropsychological examiner, are inconsistent with marked limitations." (R. 67, citing R. 525-46.) As such, although the ALJ did not explicitly discuss Plaintiff's mathematical performance, the ALJ supported with substantial evidence her determination that the test results as a whole were not persuasive evidence of Plaintiff's abilities due to Plaintiff's uncooperative behavior and the inconsistencies with other evidence in the record. As explained above, an "ALJ need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Lincoln*, 173 F.4th at 892. The ALJ need only account for limitations supported by the medical record, *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022), and here, the ALJ's consideration of Plaintiff's limitations, and her ultimate RFC determination, were supported by substantial evidence, including a thorough review of the medical evidence. (R. 70-73.) The Court declines Plaintiff's invitation to reweigh the evidence so that less weight is placed on Plaintiff's uncooperative approach to the July 23, 2023, psychological examination.

Moreover, any error in omitting an analysis of Plaintiff's mathematical limitations would be harmless because even if Plaintiff's alleged mathematical limitation means he is unable to perform all the duties of Lab Equipment Cleaner,[5] the ALJ determined, based on the testimony of the Vocational Expert ("VE") at the hearing (R. 38-39), that there are a sufficient number of other positions in the national economy that Plaintiff can perform. Specifically, the ALJ found that Plaintiff could perform the occupations of Industrial Cleaner, for which there are 16,000 jobs, and Sweep Cleaner, for which there are 1,500 jobs, both of which, pursuant to the DOT, only require Level 1 math and neither of which is disputed by Plaintiff. (R. 74.) Courts in this district have

---

[5] According to the Dictionary of Occupational Titles ("DOT"), the Lab Equipment Cleaner position involves Level 2 math, including multiplying and dividing all units of measurement, although it does not include any math related tasks as core responsibilities. 381.687-022 Cleaner, Laboratory Equipment, DICOT 381.687-022.

found that around 17,500 positions represent a significant number of jobs in the national economy. *See, e.g.*, *Derrell G. v. Bisignano*, No. 1:23-CV-1158, 2025 WL 2076668, at *7 (N.D. Ill. July 23, 2025) (15,300 jobs is significant); *Nilda G. v. O'Malley*, No. 22-cv-1542, 2024 WL 4647855, at *4, (N.D. Ill. Oct. 31, 2024) (17,000 jobs is significant); *Dorothy B. v. Berryhill*, No. 18-cv-50017, 2019 WL 2325998, at *7 (N.D. Ill. May 31, 2019) (17,700 jobs is significant). Therefore, the ALJ's omission of mathematical limitations from Plaintiff's RFC was at worst a harmless error and does not justify remand.

### C. The ALJ's Determination that Plaintiff Did Not Meet the Paragraph C Criteria of Listing 12.04 or 12.06 Was Not Supported By Substantial Evidence

Lastly, Plaintiff argues that the ALJ did not properly evaluate whether Plaintiff met the paragraph C criteria of Listing 12.04 (depressive, bipolar or related disorders) or 12.06 (anxiety and obsessive-compulsive disorders). (Pl. Mem. at 8-11.)

To meet the paragraph C criteria of Listing 12.04 or 12.06, the Plaintiff's mental disorder must be "serious and persistent," meaning "there must be a medically documented history of the disorder over a period of at least 2 years" that shows Plaintiff depends on ongoing "medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s)…to diminish the symptoms and signs of [his] mental disorder." 20 C.F.R. § Pt. 404, Subpt. P, App. 1. In addition, the evidence must demonstrate that even though Plaintiff has "diminished symptoms and signs," he has only achieved "marginal adjustment," meaning that Plaintiff has "minimal capacity to adapt to change in your environment or to demands that are not already part of your daily life." *Id.*[6]

---

[6] Plaintiff argues that he meets the Paragraph C criteria for 12.04 and 12.06 because his condition was serious and persistent, medical treatment has led to some improvements in his condition, and that he experienced marginal adjustment. (Pl. Mem. at 9-10, citing R. 312, 335, 564.) The Commissioner only takes issue with Plaintiff's contention that he experienced marginal adjustment. (Def. Mem. at 3-4.)

"In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing." *Wilder*, 22 F.4th at 652 (citing *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). Here, however, the ALJ's explanation at Step 3 that Plaintiff did not meet the paragraph C criteria stated only: "I have also considered whether the 'paragraph C' criteria of 12.04, and 12.06 are satisfied. In this case, the evidence fails to establish the presence of the 'paragraph C' criteria." (R. 68.) The ALJ did not mention the paragraph C standards, nor did she explain her reasoning for finding that Plaintiff did not meet them.[7] In recent cases in this district, courts have reversed and remanded ALJ decisions for failing to adequately address the paragraph C criteria where the ALJ included more detailed analysis of the Paragraph C criteria than the ALJ did in this case. *See*, *e.g.*, *Abigail C. v. Bisignano*, No. 25-CV-50297, 2026 WL 1734904, at *4 (N.D. Ill. June 16, 2026) (remanding where the ALJ outlined the standard for Paragraph C criteria, but did not "specify on what basis Plaintiff failed to meet the paragraph C criteria"); *Sidney M. v. Bisignano*, No. 25-CV-4467, 2026 WL 1413784, at *4 (N.D. Ill. May 20, 2026) (remanding where the ALJ did not explain how the evidence supported finding that Plaintiff did not meet paragraph C criteria); *Zachary K. v. Dudek*, No. 22 C 2782, 2025 WL 964068, at *7 (N.D. Ill. Mar. 31, 2025) (remanding where ALJ provided insufficient explanation and no logical bridge between the evidence and ALJ's conclusions related to paragraph C criteria). The ALJ's analysis of whether Plaintiff met the paragraph C criteria of Listing 12.04 and 12.06 was perfunctory at best, and insufficient to permit meaningful judicial

---

Because the Court remands the ALJ's decision based on the ALJ's lack of analysis of the paragraph C criteria, the Court need not address the other arguments.

[7] *Zellweger v. Saul*, 984 F.3d 1251, 1254 (7th Cir. 2021) (citing *Jeske v. Saul*, 955 F.3d 583, 590 (7th Cir. 2020)) ("[N]othing [ ] prohibits a reviewing court from reviewing an ALJ's step-three determination in light of elaboration and analysis appearing elsewhere in the decision.")

9

review. The ALJ's determination that Plaintiff did not meet the paragraph C criteria was not supported by substantial evidence.

The Court does not reach a conclusion about whether Plaintiff meets Listing 12.04 or 12.06. Rather, the Court remands for additional consideration of the narrow issue of whether Plaintiff satisfied the paragraph C criteria of Listing 12.04 or 12.06. On remand, the ALJ is directed to provide an analysis of whether Plaintiff meets the paragraph C criteria of Listing 12.04 or 12.06 and to support her decision with substantial evidence. [8]

**CONCLUSION**

For the foregoing reasons, the Court grants Plaintiff's motion and memorandum in support of reversing and remanding the ALJ's decision (D.E. 17, 18) and denies Defendant's memorandum in support of affirming the decision (D.E. 21).

**SO ORDERED.**

**ENTER:**

_____
**GABRIEL A. FUENTES**
**United States Magistrate Judge**

**DATED: July 2, 2026**

---

[8] The Court recognizes that the ALJ was thorough in her analysis of whether paragraph A and paragraph B criteria were met for listing 12.05. However, substantial evidence was required to support the ALJ's conclusion that the paragraph C criteria of 12.04 and 12.06 were not satisfied. 20 C.F.R. § Pt. 404, Subpt. P, App. 1.